IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-HC-2177-FL

| | | |
|---|---|---|
| MICHAEL ANTHONY SHERIDAN,<br><br>Petitioner,<br><br>v.<br><br>LESLIE COOLEY-DISMUKES,<br><br>Respondent.[1] | ) | ORDER |

Petitioner, a state inmate proceeding pro se, petitions this court for a writ of habeas corpus under 28 U.S.C. § 2254. The matter is before the court on respondent's motion to dismiss (DE 17) under Federal Rule of Civil Procedure 12(b)(6). Petitioner responded. Also before the court are various motions filed by petitioner, including his second motion to amend. In this posture, the issues raised are ripe for ruling.

**STATEMENT OF THE CASE**

On March 24, 2017, petitioner was convicted following jury trial in Wake County Superior Court of four counts of first-degree sexual exploitation of a minor, two counts of statutory rape, and one count of sexual offense in a parental role. See State v. Sheridan, 824 S.E.2d 146, 150 (N.C. App. 2019). The trial court sentenced petitioner to two consecutive sentences of 317-441 months, one consecutive sentence of 33-100 months, and four consecutive

[1] Petitioner named "State of North Carolina" as the respondent. (See Pet. (DE 1) at 1). The custodian of the correctional facility in which petitioner is incarcerated is the proper respondent in an action filed under 28 U.S.C. § 2254. See Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). Here, Leslie Cooley Dismukes, the Secretary of the North Carolina Department of Adult Correction, is the proper respondent. (See DE 17 at 1 n.1). The court constructively amends the case caption to reflect the correct respondent and will direct the clerk to amend the docket caption.

sentences of 96-176 months. Id. Petitioner was also ordered to register as a sex offender and enroll in satellite-based monitoring for the remainder of his life. Id.

Following imposition of the sentence, petitioner appealed his convictions to the North Carolina Court of Appeals. On direct appeal, petitioner argued that the trial court erred by denying his motions: 1) to dismiss sexual offense in a parental role; 2) for speedy trial; 3) for mistrial. Id. Petitioner also raised ineffective assistance of counsel. Id. In a published opinion filed February 5, 2019, the North Carolina Court of Appeals affirmed the trial court's denial of petitioner's motions to dismiss sexual offense in a parental role and for mistrial; and vacated and remanded the trial court's denial of petitioner's motion for speedy trial for consideration of the appropriate factors. Id. at 708. On certiorari review, the Court of Appeals also vacated and remanded the trial court's satellite-based monitoring determination for consideration of the appropriate factors under North Carolina's sex offender registration scheme. Id. at 707-08.

On remand, the trial court issued its final satellite-based monitoring order February 17, 2020. (Resp's Mem. Ex. 2 (DE 18-3) at2-3). The trial court then issued its final order denying petitioner's speedy trial motion July 28, 2020. (Resp's Mem. Ex. 3 (DE 18-4) at 2-9). Petitioner filed notice of appeal August 3, 2020, but subsequently withdrew the appeal December 16, 2020. (Resp's Mem. Ex. 4 (DE 18-5) at 2; Resp's Mem. Ex. 5 (DE 18-6) at 2).

While petitioner's direct appeal was ongoing, he filed his first federal habeas petition March 29, 2017. See Sheridan v. North Carolina, No. 5:17-HC-2069-BO (E.D.N.C.). The court dismissed the petition without prejudice because petitioner had not yet exhausted state remedies. See Sheridan, No. 5:17-HC-2069 (E.D.N.C. Nov. 7, 2018). He filed his second

habeas petition December 17, 2021. See Sheridan v. Ishee, No. 5:21-HC-2248-M (E.D.N.C.). That petition was dismissed November 20, 2023, and petitioner was directed to finish exhausting state court remedies. Sheridan, No. 5:21-HC-2248 (E.D.N.C. Nov. 20, 2023).

Petitioner filed this § 2254 petition July 25, 2025. (DE 1). He then filed motion to amend August 25, 2025. (DE 9). On frivolity review, the court granted petitioner's motion to amend and allowed the matter to proceed. Petitioner broadly asserts these claims: 1) speedy trial violation; 2) malicious and vindictive prosecution; 3) prosecutorial misconduct; 4) improper jury instructions; and 5) improper admission of criminal history evidence at trial. (See Pet. (DE 1) at 5-11; Amend. Pet. (DE 9) at 1-2).

On February 23, 2026, respondent filed the instant motion to dismiss, supported by memorandum of law and appendix of exhibits including records from petitioner's trial, sentencing, and state post-conviction proceedings. Petitioner responded in opposition.

**STATEMENT OF THE FACTS**

The facts underlying petitioner's convictions, as recounted by the North Carolina Court of Appeals, are summarized below:

> T.S. ("Tonya") met Defendant in March 2013, in the Raleigh neighborhood where they both lived. Tonya was fourteen years old and Defendant was forty-four. Defendant told Tonya about and introduced her to his daughter, who was around the same age. Tonya began "hanging out" with Defendant's daughter, and Defendant was "always" around.
>
> On 14 March 2013, Defendant asked Tonya if she wanted to "hang out" at his house the next day, while she waited for his daughter to get home. The next day, Defendant told Tonya his daughter was home, and she should come over.
>
> Once she entered his house, Defendant told Tonya they were alone. Defendant took Tonya into his bedroom, began kissing her, removed their clothes, and engaged in her first vaginal intercourse. Defendant and Tonya engaged in vaginal

intercourse and fellatio “every day” thereafter, and within a week or two Tonya came to believe she was “in love” with Defendant.

Tonya moved with her family to Hertford County in November 2013. Defendant continued engaging in sexual relations with Tonya after the move, when she returned to Raleigh with her mother to visit in the area. In June 2014, Tonya moved back to Raleigh and lived with Defendant. Defendant had told Tonya she could choose where she wanted to live after she turned sixteen years old. Tonya told her mother Defendant had offered her a job in Raleigh, and she was going to live with and work for him.

Defendant and Tonya shared a bed when she moved in with him and immediately resumed their sexual relationship. Their near daily sexual activity occurred before and after Tonya's sixteenth birthday. Between 2013 and 2014, Tonya used Defendant's phone at his request to take four or five nude photographs of herself. Defendant purchased food and clothing for Tonya and gave her a bank card to use for expenses.

On 27 October 2014, Defendant and Tonya argued. At Tonya's request, her grandmother dropped her off at her mother's boyfriend's house in Harnett County. Tonya's mother's boyfriend refused to allow Tonya to stay, and she returned to Defendant's house in a taxicab late that night.

When she arrived, Tonya found Defendant naked in bed with another woman. Tonya requested Defendant to pay for her cab fare, but he refused. An argument ensued and the police were called. The cab driver retained all of Tonya's luggage and belongings for the unpaid fare. Tonya was arrested and taken to jail for failing to pay the cab fare.

Tonya was released from jail at approximately 3:00 a.m. on 28 October 2014 and walked back to Defendant's home from the jail. The other woman was still at the house. Defendant and Tonya argued, and the other woman was driven home by Defendant's housemate. Tonya and Defendant slept in the same bedroom, but upon waking continued to argue, mainly about access to a phone. Defendant had provided Tonya with a phone when she had moved in, but he had taken it away from her.

Tonya attempted to retrieve the phone while Defendant was in the shower, but Defendant allegedly began to physically assault her. Tonya grabbed a beer bottle and struck him on the head. Defendant escalated the assault, and when Tonya fell to the floor, she saw a knife and grabbed it. Defendant and Tonya grappled with the knife, but she regained control of it and stabbed Defendant. The assaults continued, and Defendant's mother called 911.

> Officers arrived and Tonya was transported to the hospital and underwent a sexual assault examination. Tonya told police officers that Defendant had raped her that day and had been sexually active with her prior to that occurrence. Tonya was placed into foster care. Soon after, Tonya learned she was pregnant again and gave birth to a son. She had previously aborted an earlier pregnancy. Subsequent DNA testing confirmed to a confidence interval of 99% that Defendant was the father of the child.

Sheridan, 824 S.E.2d at 149-50.

**COURT'S DISCUSSION**

A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[2] "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the [petitioner]," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

Similarly, a motion to dismiss a § 2254 petition "tests the legal sufficiency of the petition, requiring the federal habeas court to assume all facts pleaded by the § 2254 petitioner to be true." Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009); see Wolfe v. Johnson, 565 F.3d 140, 169 (4th Cir. 2009). In ruling on a motion to dismiss, the court looks to the record of the state proceeding,

[2] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

including affidavits and evidence presented in such proceedings, as well as other matters of public record. See, e.g., Cullen v. Pinholster, 563 U.S. 170, 180–82 (2011); Walker, 589 F.3d at 139.

B. Analysis

1. Petitioner's Motion to Amend

First the court considers petitioner's motion to amend. Under Federal Rule of Civil Procedure 15, leave to amend should be freely given when justice so requires. Here, petitioner's proposed amendment does not materially alter any of the claims asserted in his original petition or first amendment. (See 2d Amend. Pet. (DE 22) at 1-4). Instead, petitioner generally reasserts and emphasizes allegations previously raised. (Id.). Considering the lenient standard for amending pleadings, petitioner's motion to amend is granted. The operative petition in this action for consideration under respondent's motion to dismiss are the original petition (DE 1), the first amended petition (DE 9), and the second amended petition (DE 22).

2. Respondent's Motion to Dismiss

Respondent argues that petitioner's claims are untimely. A one-year statute of limitations applies to a petition for writ of habeas corpus filed by a person in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d)(1). The period begins to run from the latest of several dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. The one-year statute of limitations is tolled, however, during the time "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). An application for postconviction or other collateral review is pending from initial filing until final disposition by the state court. See Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). But the time between when a petitioner's conviction becomes final and when a petitioner files a state application for post-conviction relief counts against the one-year limitation period. See Holland v. Florida, 560 U.S. 631, 638 (2010); Hernandez v. Caldwell, 225 F.3d 435, 438–39 (4th Cir. 2000).

These time limitations may be equitably tolled in extraordinary circumstances. "A federal habeas petitioner [challenging his state conviction under § 2254] may be entitled to equitable tolling of the one-year statute of limitations . . . where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Justus v. Clarke, 78 F.4th 97, 104–05 (4th Cir. 2023) (internal quotation omitted). Equitable tolling, however, applies only if the petitioner can show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649.

Here, the statute of limitations began to run on the date petitioner's judgment became final by the conclusion of direct review or the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). Thus, petitioner's one-year limitation period began running December 16, 2020, the date he withdrew his appeal from the North Carolina Court of Appeals. The instant

§2254 petition was filed July 25, 2025—more than three years after petitioner's time to file had expired. See 28 U.S.C. § 2244(d)(1).

And petitioner is not entitled to equitable tolling of the statute of limitations. Petitioner has not shown that he diligently pursued his rights or that extraordinary circumstances prevented him from timely filing. See Holland, 560 U.S. at 649. To the contrary, in petitioner's second habeas action, he was alerted by the court that he was close to running up against the applicable statute of limitations. See Sheridan, 5:21-HC-2248-M, at 7-8 (E.D.N.C. April 18, 2023) (noting petitioner's habeas petition was filed December 8, 2021, by operation of the prison mailbox rule, and one-year limitation period ran until December 16, 2021). Even so, after that action was dismissed November 20, 2023, for petitioner's failure to exhaust, he took no action in state or federal court until filing the instant petition more than twenty months later.

In sum, this habeas petition is untimely under 28 U.S.C. § 2244(d)(1), and petitioner fails to show grounds for equitable tolling of the statute of limitations. Thus, the petition is dismissed as time barred.

D. Certificate of Appealability

Finally, the court considers whether to issue certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief, and respondent is entitled to dismissal of the petition,

the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). After reviewing the claims presented in the habeas petition considering the applicable standard, the court concludes reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issues are adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). Accordingly, a certificate of appealability is denied.

**CONCLUSION**

Based on the foregoing, petitioner's motion to amend (DE 22) is GRANTED. Respondent's motion to dismiss (DE 17) is also GRANTED. Petitioner's outstanding motions (DE 21, 23, and 24) are DENIED as moot. The petition is DISMISSED with prejudice, and a certificate of appealability is DENIED. The clerk is DIRECTED to close this case and to amend the docket caption as set forth in footnote one.

SO ORDERED, this the 25th day of September, 2026.

LOUISE W. FLANAGAN
United States District Judge